JONATHAN PITEL, WSBA #47516
PENNY L. ALLEN, WSBA #18821
SAMANTHA HELLWIG, WSBA #50634
Counsel for Defendants
1125 Washington St SE
Olympia, WA 98504-0110

The Honorable Tiffany M. Cartwright

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| PERIDOT TREE WA, INC., | NO.  3:23-cv-06111-TMC |
| Plaintiff, | DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) |
| v. | |
| WASHINGTON STATE LIQUOR AND CANNABIS CONTROL BOARD and WILLIAM LUKELA, in his legal capacity as Director of Washington State Liquor and Cannabis Board, | **Noting Date: March 22, 2024** **Without Oral Argument** |
| Defendants. | |

## I.      INTRODUCTION

The entirety of Peridot Tree's complaint and this suit rest on a single, incorrect legal assertion: that Plaintiff has a constitutional right to engage in Washington's federally illegal cannabis market. As this Court previously found in this case and in *Brinkmeyer v. Washington State Liquor and Cannabis Board*, the United States Constitution provides no such right. *See*, ECF No. 33; *Brinkmeyer v. Washington State Liquor and Cannabis Board*, No. C20-5661 BHS, 2023 WL 1798173 (W.D. Wash. Feb. 7, 2023). Therefore, Plaintiff's First Amended Complaint fails to state a claim for which this Court may grant relief, and must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

## II.    FACTUAL BACKGROUND

### A.    Washington Marijuana Law

In 2012, Washington voters approved Initiative Measure No. 502 (I-502). 2013 Wash. Sess. Laws 28-67. I-502 established a regulatory system for the sale, production, and processing of limited amounts of marijuana for recreational use by adults. *Id*. Washingtonians empowered the Liquor and Cannabis Board ("Board") to enforce I-502 and to implement rules to meet the goal of "tak[ing] marijuana out of the hands of illegal drug organizations" and create "a tightly regulated, state-licensed system similar to that for controlling hard alcohol." 2013 Wash. Sess. Laws 29; Wash. Rev. Code §§ 69.50.331(4), .342, .345 (2013). The initiative also limited participation in the newly decriminalized market to Washington residents. Wash. Rev. Code § 69.50.331(1).

The licensed sale of regulated marijuana does not violate Washington law: however, it remains a criminal offense under federal law. Pursuant to the Controlled Substance Act (CSA), Congress deemed marijuana a Schedule I drug and made any *interstate* marijuana trade illegal. 21 U.S.C. § 812(c) (2018); 21 U.S.C. § 841(a) (2018). Despite the CSA, some states have authorized the *intrastate* production, sale, and possession of marijuana in certain circumstances, and have regulated their intrastate market to protect the health, safety and welfare of their state's citizens.

In 2015, Washington merged its recreational and medical marijuana markets and expanded the number of retail licenses available. 2015 Wash. Sess. Laws 287, 299-300. The Legislature mandated priority for these new licenses be given to those who operated a Washington collective garden and paid Washington taxes. Former Wash. Rev. Code § 69.50.331(1)(a) (2015).

### B.    Washington's Social Equity Program

Washington's Legislature adopted a Social Equity Program in 2020 to help remedy "harms resulting from the enforcement of cannabis-related laws in disproportionally impacted

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

1   areas …" and to "further an equitable cannabis industry by promoting business ownership among

2   individuals who have resided in areas of high poverty and high enforcement of cannabis-related

3   laws." Washington Laws of 2020, chpt. 236, § 1(3).

4        The Social Equity Program required the Board to hold all retail marijuana licenses "that

5   had been subject to forfeiture, revocation or cancellation by the board," and any marijuana

6   license that could have been issued but had not been issued from December 1, 2020 to July 1,

7   2023. Former Wash. Rev. Code § 69.50.335(1) (2022).[1] Under the law, these reserved licenses

8   could only be awarded to Social Equity applicants. Wash. Rev. Code § 69.50.335(2)(a).

9        To qualify for the program, an applicant must meet two of the following three criteria:

- Lived in a disproportionately impacted area in Washington for a minimum of five years between 1980 and 2010;
- Been arrested or convicted of a cannabis offense, or had a family member arrested or convicted of a cannabis offense;
- Had a household income in the year prior to submitting an application of less than the median household income in Washington.

14   Wash. Admin. Code § 314-55-570; Wash. Rev. Code § 69.50.335(2022).

15        The Social Equity application window opened on March 1, 2023, and closed April 27,

16   2023. ECF No. 27 ¶ 10. Social Equity applicants first had to electronically file an application with

17   the Department of Revenue's Business Licensing Online Application System. Wash. Admin.

18   Code § 314-55-570(3)(a).

19        The Legislature required the Board to use a third party contractor to evaluate and score

20   Social Equity applications. *See* Wash. Admin. Code § 314-55-570. Applicants were required to

21   provide documents that supported and validated their responses. *See* Wash. Admin. Code § 314-

22   55-570(3)(c)(ii).

23        The Board notified applicants who did not qualify for the Social Equity Program or

24   whose   score   was   too   low   to   proceed   by   letter   on   September   17,   2023.

---

[1] In 2023, Washington's Legislature adopted ESSB 5080, which changed the definition of a disproportionally impacted area and of a Social Equity applicant. See ESSB 5080 § 3 which was codified in Wash. Rev. Code 69.50.335(6) (2023).

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

1   ECF No. 27 ¶ 25. The Board issued a Statement of Intent to Withdraw Social Equity Cannabis

2   Retail Application (SOI) to applicants wishing to challenge the decision. The Board served the

3   SOI along with a form to request a formal administrative hearing pursuant to Wash. Rev. Code §

4   34.05.413. By statute, an applicant must file its formal request for a hearing within 20 days of

5   service of the SOI, or forfeit any challenge to the decision.[2]

6   **C.      Peridot Applied for and was Denied a Social Equity License**

7           Peridot filed its application for a retail marijuana store under the Social Equity Program

8   and its application was sent to the third-party contractor for evaluation. ECF No. 27 ¶ 22. As part

9   of its application Peridot submitted information attempting to validate that its majority owner

10  lived in a DIA in Michigan. ECF 27 ¶ 24.The majority owner, Kenneth Gay, claimed to have

11  lived in the same location for 20 years and that his address was designated as a disproportionately

12  impacted area by Michigan. *Id*. Further, Peridot Tree WA does not allege in its Complaint that

13  Michigan's disproportionately impacted area criteria are identical to Washington's or specifying

14  the periods in which the area of his residence was considered a disproportionately impacted

15  areas. See, ECF 27 ¶24.

16          On September 17, 2023, the Board sent a letter by email to Peridot stating it was

17  withdrawing Peridot's application because it did not meet minimum qualifications and that it

18  had 20 days to submit an appeal. ECF 27 ¶ 25.

19                              **III.     ARGUMENT**

20  **A.      Standard of Review**

21          A court may grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it is clear that no

22  relief could be granted under any set of facts that could be proven consistent with the allegations.

23  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). A party must move to

24

25  _____

26          [2] Peridot did not appeal its denial, and the Board reserves the right to raise all potential defenses in its
    responsive pleadings to Peridot's Complaint, including, but not limited to, waiver and failure to exhaust
    administrative remedies.

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

assert its affirmative defense of a failure to state a claim before response pleadings are filed. Fed. R. Civ. P. 12(b)(6). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss only admits, for the purposes of the motion, all well-pleaded facts in the complaint, as distinguished from conclusory allegations. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976); *see also Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under 42 U.S.C. § 1983).

**B.    There is No Constitutionally Protected Right to Engage in an Illegal Interstate Market**

   **1.    This Court has previously determined that the dormant Commerce Clause does not apply to Washington's intrastate cannabis market**

As analyzed at length in this Court's Order Denying Preliminary Injunction, this Court has already rejected Peridot's claim that Washington's residency requirements violate the dormant Commerce Clause. ECF No. 33; *Brinkmeyer*, 2023 WL 1798173 (W.D. Wa. 2023). This Court's reasoning in denying Peridot's requested injunction and the prior analysis from *Brinkmeyer* are correct: the dormant Commerce Clause provides no constitutional right to participate in an illegal interstate market. And because there is no such right, there is no basis for this action.

*Brinkmeyer* addressed the six-month residency requirement in Wash. Rev. Code § 69.50.331(1)(b)(ii), (iii) and Wash. Admin. Code §§ 314-55-020(11) (2021). In *Brinkmeyer,* an Idaho resident who wished to "invest in and own cannabis retail stores in Washington" brought suit alleging that "Washington's residency requirements for obtaining a commercial cannabis license are facially unconstitutional." *Brinkmeyer* at *1-2. The plaintiff there challenged the general residency requirement that prohibits the Board from issuing marijuana licenses to "a

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

person… who has not lawfully resided in the state for at least six months prior to applying to receive a license."[3] *Id.* at 1. Peridot rests part of its challenge on those same residency requirements. ECF No. 27 at 5-8.

*Brinkmeyer* squarely applies here.  That case, like this one, turned on whether the United States Constitution provide a right to engage in Washington's entirely intra-state marijuana market, which is illegal under federal law. And *Brinkmeyer*, in keeping with similar cases, properly found that citizens do not "have a federal statutory or constitutional property right to cannabis while it remains federally illegal." *Brinkmeyer*, at *8; *see also*, *Shelton et al., v. Liquor and Cannabis Board of Washington State, et al.*, No.21-5135 BHS, 2022 WL 2651617 (W.D. Wash. July 8, 2022); *Vell Harris v. California Med. Forensic Serv.*, 2016 WL 5407820 at *3 (N.D.Ca. 2016) (finding no viable constitutional claim in denying the plaintiff access to medical marijuana while incarcerated: "no plausible federal claim can be drawn from plaintiff's allegations regarding the denial of his requests to use marijuana, which is illegal under the federal Controlled Substances Act."); *Vail v. City of Sacramento*, 2019 WL 3500518 at *5 (E.D. Ca. 2019) ("federal law does not recognize any protectable liberty or property interest in the cultivation, ownership, or sale of marijuana."); *Varscite Four, LLC  and Variscite NY Five, LLC v. NY State Cannabis Control Board, et al.,* 2024 WL 406490 at *12 ("This Court is persuaded by the reasoning of the courts in *Brinkmeyer* and *Peridot Tree WA Inc.*, and Judge Gelpi's dissent in Northeast Patients Group, and therefore finds the Plaintiffs are unlikely to succeed on the merits of their dormant Commerce Clause challenge.") Judge Settle, reviewing *Brinkmeyer's* challenge, found that the dormant Commerce Clause did not apply to Washington's residency requirements, because "the dormant Commerce Clause does not apply to federally illegal markets, including Washington's cannabis market and, thus, it does not apply to Washington's residency requirements." *Brinkmeyer*, at *9.

[3] The general, statutory six-month residency requirement is reflected in the regulations specific to the Social Equity program adopted by LCB. Wash. Admin. Code § 314-55-570(2)(b).

6

1    While not determinative of this Motion, this Court applied the same reasoning in

2    rejecting Peridot's Motion for Preliminary Injunction. "The fundamental objective of the dormant

3    Commerce Clause is to preserv[e] a national market for competition undisturbed by preferential

4    advantages conferred by a State upon its residents or resident competitors." ECF No. 33 at 15 (citing

5    *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997)). But, Congress has already exercised its

6    Commerce Clause authority in barring any interstate market in cannabis ECF No. 33 at 19; *Gonzalez*

7    *v. Raich*, 545 U.S. 1 (2005). "It makes little sense why the dormant Commerce Clause would protect

8    an interstate market that Congress affirmatively prohibited, given that protecting this market would

9    facilitate illegal interstate activity." ECF No. 33 at 19. Thus, "Peridot cannot use the dormant

10    Commerce Clause to demand a constitutional right to participate in an illegal interstate market."

11    ECF No. 33 at 19; *see also Brinkmeyer*, at *9 ("citizens do not have a legal interest in

12    participating in a federally illegal market.").

13    **2.    There is no basis to depart from this Court's prior reasoning**

14    No Court in this Circuit has sustained a dormant Commerce Clause challenge to a similar

15    marijuana licensing system; either rejecting those claims (*Brinkmeyer*) or abstaining from

16    addressing the merits of the challenge. *Peridot Trees, Inc. et al., v. City of Sacramento*, No. 2-

17    22-cv-00289_KJM-DB, 2022 WL 10629241 (E.D.Ca. Oct. 18, 2022); *Variscite, Inc. v. City of*

18    *Los Angeles, et al.*, No. 22-cv-08685-SPG-SK, 2023 WL 3493557, at *15-16 (C.D.Ca. April 11,

19    2023).

20    Only one appellate decision has applied the dormant Commerce Clause to a state-legal

21    cannabis market, the First Circuit Court of Appeals' decision in *Northeast Patients Group v.*

22    *United Cannabis Patients & Caregivers of Maine*. But that case is both (1) readily

23    distinguishable from this and (2) incorrect on the merits, as this Court has previously explained.

24    First, *Northeast Patients Group* involved Maines's *medical* cannabis market, not a

25    recreational cannabis market, and that court relied on its reading of the Rohrabacher-Farr

26    Amendment, as effectively recognizing an interstate market in medical cannabis that is not

1  federally prohibited. *Ne. Patients Grp.*, 45 F.4th at 547-49.  Washington does not have a separate

2  medical cannabis market; therefore that reasoning does not apply. And this Circuit has

3  recognized that despite defunding enforcement, cannabis remains illegal under federal law.

4  *McIntosh*, 833 F.3d at 1179 n.5; *see also Nixon*, 839 F.3d at 888.

5  　　　Further, as this Court noted in *Brinkmeyer*, Washington has deliberately designed its

6  marijuana market so that it is entirely intra-state. *Brinkmeyer*, at *12. Washington forbids its

7  marijuana licensees from exporting any marijuana outside its borders, importing any marijuana

8  from beyond its borders, and advertising in any media intended to reach beyond Washington's

9  borders. Wash. Rev. Code § 69.50.325. In fact, Washington marijuana licensees are forbidden

10  from selling to or purchasing from tribal entities located wholly within Washington's borders

11  unless the State and the Tribe have reached an inter-governmental compact. Wash. Rev. Code §

12  69.50.3251. Maine took none of the steps that Washington has to ensure a wholly intrastate

13  market. In fact, Maine encouraged interstate activity in its cannabis market. *See Ne. Patients*

14  *Grp.*, 45 F.4th at 547.

15  　　　Even if *Northeast Patients Group* were applicable despite these differences (which it is

16  not),  it is the *dissent* in *Northeast Patients Group* that provides the more persuasive reasoning

17  as to the application of the dormant Commerce clause. *Ne. Patients Grp. v. United Cannabis*

18  *Patients & Caregivers of Maine*, 45 F.4th 542, 560 (1st Cir. 2022) (Gelpi, J., dissenting)

19  ("[A]ppellees should not be able to receive a constitutional remedy in federal court to protect the

20  sale and distribution of a controlled substance which remains illegal under federal law."); *see*

21  *also Brinkmeyer*, 2023 WL 1798173 at *11 (W.D. Wa. 2023); ECF No. 33 at 19. And this Court

22  is not alone in agreeing with Judge Gelpi's dissent. Recently, the District Court for the Northern

23  District of New York followed this Court's reasoning, and similarly pointed to the dissent in

24  *Northeast Patients Group* in rejecting a requested preliminary injunction on dormant Commerce

25  Clause grounds. *See Variscite NY Four LLC, et al. v. New York State Cannabis Control Bd., et*

26  *al*, No. 1:23-cv-01599, 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024) (stating that "this Court is

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

1   persuaded by the reasoning of the courts in *Brinkmeyer* and *Peridot Tree WA Inc.*, and Judge

2   Gelpí's dissent in *Northeast Patients Group*" in denying a motion for preliminary injunction.").

3         Finally, not only is the First Circuit's opinion readily distinguishable, the contrary

4   decisions by district courts from around the country provide no basis to depart from *Brinkmeyer*

5   or this Court's preliminary injunction order. To begin with, each of those contrary decisions

6   predate those orders. *See Toigo v. Department of Health and Senior Services*, 549 F.Supp.3d 985

7   (W.D. Mo. 2021); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 813 (E.D. Mich. 2021); *NPG,*

8   *LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14,

9   2020); *Variscite NY One, Inc. v. New York*, 640 F.Supp.3d 232 (N.D.N.Y. 2022).

10         More importantly, each of those courts simply assumed that the dormant Commerce

11   Clause applied to illicit markets, without further discussion. *See e.g., Toigo*, 549 F.Supp.3d at

12   990. For instance, in *Lowe*, the court's analysis is limited to agreeing with the *NPG* court, "the

13   Court finds the reasoning expressed and conclusions drawn in *NPG* to be persuasive and

14   applicable to the instant case." *Lowe*, 544 F.Supp.3d 804, 816 (E.D. Mich. 2021). Similarly, as

15   noted in *Variscite NY Four*, the *Variscite NY One* court limited its analysis to looking at *NPG*

16   and other district decisions, without analyzing the threshold question. *Varscite Four, LLC and*

17   *Variscite NY Five, LLC v. NY State Cannabis Control Board*, 2024 WL 406490 at *11

18   ("However, these courts performed a dormant Commerce Clause analysis without directly

19   addressing the threshold question of whether the dormant Commerce Clause analysis applies to

20   a state licensing program for cannabis.").  The *Toigo* court provided the same level of analysis

21   as the *Lowe* and *Variscite NY One* courts. In fact, the *Toigo* court incorrectly relied on a case as

22   applying the CSA, when the Act was never mentioned. *Toigo*, 549 F.Supp.3d at 990 (incorrectly

23   citing *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87-88, 104 S.Ct. 2237, 81

24   L.Ed.2d 71 (1984), which involved timber processing regulations).

25         Significantly, each of these contrary cases rest their analysis on the *NPG* court, which, in

26   turn never considered whether or not the dormant Commerce Clause applies to illegal markets.

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

Instead, the *NPG* court considered only whether Congress had expressly authorized states to discriminate against out-of-state market participants. *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 at *10 (D. Me. Aug. 14, 2020). But that approach fails to grapple with the question of whether there is a constitutional right to engage in an illegal activity.

In contrast, since *Brinkmeyer*, each court that has analyzed the threshold question of whether the dormant Commerce Clause applies at all has rejected the application of the dormant Commerce Clause to illegal cannabis markets—including this Court. That reasoning is correct, and requires that this action be dismissed.

## IV.    CONCLUSION

Congress has exercised its authority under the Commerce Clause to bar any interstate market in cannabis. And, as this Court has already found, there is no constitutional right to engage in activity that Congress has declared illegal. Therefore, this action must be dismissed.

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702

1

**<u>Word Count Certification</u>**

2

3    I certify that this memorandum contains 2979 words, in compliance with the Local

4    Civil Rules.

5

6

7    DATED this 20th day of February, 2024.

8                                              ROBERT W. FERGUSON
                                              Attorney General
9

10                                             _____
                                              JONATHAN PITEL, WSBA #47516
11                                             *Assistant Attorney General*
                                              PENNY L. ALLEN, WSBA #18821
12                                             *Senior Counsel*
                                              Counsel for Defendants
13                                             1125 Washington St SE
                                              Olympia, WA 98504-0110
14                                             Phone: (360) 753-2702
                                              E-mail: Jonathan.Pitel@atg.wa.gov
15                                                      PennyL.Allen@atg.wa.gov
                                                        LALOlyEF@atg.wa.gov
16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I, Jonathan E. Pitel, hereby certify that on February 20, 2024, I caused the foregoing **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)**, to be served upon the below listed counsel for Plaintiff:

Via CM/ECF portal:

Jimmy Garg
300 Lenora Street #1063
Seattle, WA 98121

Jeffery M. Jensen
9903 Santa Monica Blvd #890
Beverly Hills, CA 90212

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 20th day of February 2024, at Olympia, WA.

JONATHAN E. PITEL, WSBA # 47516
Assistant Attorney General

DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(6) -- NO.
3:23-CV-06111-TMC

12

ATTORNEY GENERAL OF WASHINGTON
Licensing & Administrative Law Division
1125 Washington Street SE, PO Box 40110
Olympia, WA 98504-0110
(360) 753-2702